UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **INVESTAR BANK, NATIONAL ASSOCIATION** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-680-EWD** |
| **BOB G. DEAN, JR.** | **CONSENT** |

**RULING**[1]

Before the Court is the Motion to Withdraw Certain Admissions Deemed Admitted Pursuant to Request for Admissions ("Motion"), filed by Defendant Bob G. Dean, Jr. ("Dean").[2] The Motion is opposed by Plaintiff Investar Bank, National Association ("Investar").[3] Because Dean has not established that his prior counsel failed to timely advise him of Requests for Admissions propounded by Investar, and because Dean has not satisfied the applicable Fed. R. Civ. P. 36(b) factors, the Motion will be denied.

I.  **BACKGROUND**

Investar filed its Verified Complaint on Note and Guaranties seeking judgment against Dean for defaulted promissory notes executed by Dean (on his own behalf and on behalf of entities he owns), and on Dean's guarantees of payment of those loans.[4] Dean filed an Answer through his former counsel, J. Mark Robinson ("Robinson"), after obtaining an extension of time to respond.[5] During the course of discovery and with no opposition from Dean, Investar was granted leave to

---

[1] On February 17, 2022, the parties consented to jurisdiction before the undersigned. An order of reference was issued same day. R. Docs. 17-18.

[2] R. Doc. 40, and *see* Dean's reply brief at R. Doc. 58.

[3] R. Doc. 49.

[4] R. Doc. 1, ¶ 7, pp. 3-44, 49-55. Investar alleges that Dean executed approximately twenty-one promissory notes, either personally or on behalf of various companies owned or operated by Dean, which are all in default, as well as approximately twenty commercial guarantees. The Court has subject matter jurisdiction under 28 U.S.C. §1332 as Investar's main office and headquarters is in Louisiana, Dean's domicile is in Georgia, and the amount in controversy far exceeds the jurisdictional threshold. *Id.* at ¶ 4 and *see Wachovia Bank v. Schmidt,* 546 U.S. 303 (2006) ("A national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located") and 28 U.S.C. § 1348.

[5] R. Docs. 11, 15, 19.

propound more than twenty-five interrogatories and requests for admissions upon Dean.[6] On April 7, 2022, Investar served its first set of discovery requests on Dean, through Robinson, including 136 requests for admission (the "Requests").[7] Dean does not deny that he failed to timely provide responses to the Requests, which were due on or before May 9, 2022 under the Fed. R. of Civ. P.[8]

On September 7, 2022, Investar moved for summary judgment against Dean for all amounts due under the defaulted notes. Investar provided evidence of the notes and guarantees, as well as Dean's admissions to the Requests, which were deemed admitted by operation of Fed. R. Civ. P. 36(a) when Dean failed to timely answer.[9] Over a month later, Dean, through newly enrolled counsel, filed the instant Motion, seeking an order permitting him to withdraw certain deemed admissions, to serve amended answers to certain Requests, and to obtain additional time to oppose Investar's summary judgment motion with newly-proffered declarations.[10] Investar opposed the Motion, and Dean filed a Reply.[11]

An evidentiary hearing was scheduled, primarily to address Dean's argument that Robinson failed to provide notice to Dean (or to Dean's wife and/or to Dean's other counsel) of the Requests, which prevented Dean from timely serving responses. Dean was ordered to arrange for Robinson's testimony at the hearing, and the parties were permitted to present other relevant testimony and evidence.[12] At the hearing, Robinson and two Investar witnesses testified. The parties agreed to submit the Motion on the filings and the hearing evidence, and the Motion was taken under

---

[6] R. Docs. 22-24.
[7] R. Doc. 35-4.
[8] R. Doc. 40, pp. 1-2; R. Doc. 25-2, p. 24; R. Doc. 49, p. 4.
[9] R. Doc. 25-2, pp. 23-25.
[10] R. Doc. 37 (order granting motion to substitute Lawrence Anderson for Robinson as counsel) and R. Doc. 40, pp. 1-2. While Dean seeks additional time to oppose Investar's summary judgment motion (R. Doc. 40-1, p. 1), he filed an opposition memorandum. R. Doc. 41.
[11] R. Docs. 49 through 55 and R. Doc. 58. The parties received several extensions of time to file their motion papers, in part because of ongoing settlement negotiations. R. Docs. 43, 45, 47, 57.
[12] R. Doc. 61.

advisement.[13]

## II. LAW AND ANALYSIS

### A. Applicable Legal Standards

Under Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to a claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[14] Under Fed. R. Civ. P. 36(a)(1), "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."[15]

Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact.[16] Such breadth allows litigants to winnow down issues before trial and thus focus their energy and resources on disputed matters.[17] Importantly, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."[18] For Rule 36 to be effective in this regard, litigants must be able to rely on the fact that matters admitted will not later be subject to challenge.[19] Thus, as this Court has

---

[13] R. Doc. 62.
[14] Fed. R. Civ. P. 26(b)(1).
[15] *Yinerson, LLC v. Farmers Rice Milling Co., LLC,* No. 19-407, 2022 WL 3704147, at *1 (M.D. La. July 27, 2022).
[16] *In re Carney,* 258 F.3d 415, 419 (5th Cir. 2001), citing *e.g., Stubbs v. Commissioner of I.R.S.,* 797 F.2d 936, 938 (11th Cir. 1986); *Campbell v. Spectrum Automation Co.,* 601 F.2d 246, 253 (6th Cir. 1979).
[17] *In re Carney,* 258 F.3d at 419, citing Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2254 (1994).
[18] *Yinerson, LLC,* 2022 WL 3704147, at *1, citing Fed. R. Civ. P. 36(a)(3).
[19] *In re Carney,* 258 F.3d at 419, citing *American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.,* 930 F.2d 1117, 1119 (5th Cir. 1991).

recognized, "Rule 36 is unambiguous regarding the consequences of failing to respond to a request for admission: absent a timely response, '[a] matter *is* admitted.'"[20]

To that end, Rule 36(b) provides that "[a]ny matter admitted ... is conclusively established unless the court on motion permits withdrawal or amendment of the admission."[21] "Rule 36(b) requires that a trial court find that withdrawal or amendment: 1) would serve the presentation of the case on its merits, but 2) would not prejudice the party that obtained the admissions in its presentation of the case."[22] The burden to establish these factors is on the party who failed to timely respond.[23] Significantly, even when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission.[24] Other factors considered are whether the plaintiff has demonstrated that the merits would be served "by advancing evidence showing 'the admission is contrary to the record of the case,'"[25] and consideration of the fault of the party seeking withdrawal.[26]

### B. Dean Has Not Established that Robinson Failed to Notify Dean and/or His Representatives of the Requests

In support of his contention that Robinson failed to notify him of the Requests, Dean relies

---

[20] *Yinerson, LLC,* 2022 WL 3704147, at *2, citing Fed. R. Civ. P. 36(a)(3) (emphasis added).
[21] Fed. R. Civ. Proc. 36(b); *Yinerson, LLC,* 2022 WL 3704147, at *1 and *In re Carney,* 258 F.3d at 419 ("This Circuit has stressed that a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b).") (citation omitted).
[22] *In re Carney,* 258 F.3d at 419, citing *American Auto.,* 930 F.2d at 1119 (citations omitted) and Fed. R. Civ. P. 36(b).
[23] *In re Carney,* 258 F.3d at 420.
[24] *See Le v. Cheesecake Factory Restaurants Inc.,* No. 06-20006, 2007 WL 715260, at *2 (5th Cir. Mar. 6, 2007) ([E]ven when Rule 36(b)'s two-factor test has been satisfied, the district court 'still has discretion to deny a request to withdraw or amend an admission.'") (citations omitted). *In re Carney,* 258 F.3d at 419, citing *United States v. Kasuboski,* 834 F.2d 1345, 1350 n. 7 (7th Cir. 1987) ("[R]ule 36(b) allows withdrawal of admissions if certain conditions are met and the district court, in its discretion, permits the withdrawal.").
[25] *Le,* 2007 WL 715260, at *2, citing *North Louisiana Rehabilitation Center, Inc. v. United States,* 179 F.Supp.2d 658, 663 (W.D. La. 2001) (quoting *Ropfogel v. United States,* 138 F.R.D. 579, 583 (D. Kan. 1991)); *accord Branch Banking & Trust Co. v. Deutz-Allis Corp.,* 120 F.R.D. 655, 658-59 (E.D. N.C. 1988) (denying withdrawal because the movants for withdrawal proffered "no affidavit, verified pleading, or other evidence ... to suggest the admission, if left standing, would render an unjust result under the law"). An additional factor considered is whether the admission "is no longer true because of changed circumstances or [that] through an honest error a party has made an improvident admission." *Le*, 2007 WL 715260 at *2, citing *N. La. Rehab. Ctr. Inc.,* 179 F.Supp.2d at 663.
[26] *Le,* 2007 WL 715260, at *2, citing *Pickens v. Equitable Life Assurance Soc. of U. S.,* 413 F.2d 1390, 1394 (5th Cir. 1969).

on declarations that he and his wife, Karen A. Dean ("Karen"), executed under penalty of perjury.[27] There are several issues regarding these declarations, *discussed below,* but even if they are considered, the substantive allegations against Robinson fail considering Robinson's testimony at the hearing. In support of withdrawal of his deemed admissions, Dean relies heavily on the assertion that Robinson failed to timely give Dean notice of the Requests such that Dean was not at fault in failing to timely respond.[28] Dean specifically alleges that: "Robinson….did not send me or my other counsel the written discovery…related to this lawsuit;" "For several months prior to the September 7, 2022 motion for summary judgment, Mr. Robinson did not communicate with me at all on this case…;" "In fact, Mr. Robinson completely abandoned me as a client and did not return calls or emails from my Atlanta attorney…;" "Had Mr. Robinson communicated with me or my representatives or my wife…, there would have been a response to the requests…;" and, "In the last month, Mr. Robinson effectively acknowledged that he had abandoned the representation of me in this case by returning substantially all of the attorneys' fees I had paid him, which was well into six figures…."[29] Neither Dean nor Karen testified at the hearing.

In contrast, Robinson denied the above-referenced statements in the declarations.[30] Robinson testified that he did not abandon Dean and denied Dean's representation that he paid Robinson hundreds of thousands of dollars or that Robinson returned the fees.[31] Significantly, Robinson

---

[27] R. Docs. 40-2 and 40-3. Mrs. Dean is referred to by her first name to avoid confusion with her husband. Karen claims to be Dean's guardian and conservator of his property and alleges that she formerly assisted Dean with the operation of his businesses and cared for Dean after his June 21, 2021 surgery. R. Doc. 40-3, p. 1. According to the Final Order attached to her declaration, Dean was appointed emergency conservator and emergency guardian over Dean by the Probate Court of Fulton County, Georgia on September 26, 2022, which was after the discovery responses were due and after the Motion for Summary Judgment was filed (although before Dean's opposition to the Motion for Summary was due). R. Doc. 40-3, pp. 6-8. The appointment was limited to a 60-day period, and there is no record of appointment of a permanent conservator or guardian for Dean.
[28] R. Doc. 40-1, pp. 1-2.
[29] R. Doc. 40-2, pp. 7-8 and *see* Karen's allegation that Robinson abandoned Dean at R. Doc. 40-3, p. 2.
[30] Robinson appeared and testified voluntarily, but his testimony was constrained by the attorney-client privilege. Robinson consulted his emails and records during the hearing and recesses, which counsel for both sides declined to review.
[31] R. Doc. 40-2, p. 8.

5

testified that he emailed the Requests to Brian Stoltz, Dean's counsel at the Parker Poe law firm in Atlanta, Georgia, the same day Robinson received them via email from Investar's counsel (April 7, 2022).[32] Robinson testified that he did so at Dean's prior direction because Dean put Parker Poe in charge of all of Dean's civil litigation.[33] Moreover, Robinson testified that his billing records confirmed that *he personally met with Dean on April 18, 2022* in Georgia before the responses to the Requests were due, and they verbally discussed the Requests and matters concerning this lawsuit; therefore, even if Dean's other counsel did not apprise Dean of the Requests, Dean was made aware of the Requests by Robinson before the deadline to respond expired.[34] Robinson also testified that he was in communication with Dean from April[35] until early July, including personally meeting with Dean again on May 9, 2022 in Georgia and then on June 23, 2022 in Louisiana, when Dean requested his legal files, which Robinson confirmed contained the Requests.[36] Therefore, the latest that Dean received a physical copy of the Requests was in June 2022, yet Dean still failed to file a motion to withdraw the deemed admissions until three and a half months later on October 12, 2022. Robinson's

---

[32] Investar's counsel stated at the hearing that on the same day Investar served the Requests on Robinson (April 7, 2022), they also emailed Ashley Edwards at Parker Poe, and Matthew Moeller and David Smith of the Moeller Firm in New Orleans (local counsel for Parker Poe, who represented Dean in 8 or 9 proceedings but who later withdrew as Dean's counsel, per Robinson), with a copy of the Requests. Investar also introduced the transmittal email at the hearing. Investar Exhibit 5, p. 44.

[33] Robinson testified that Karen was friends with Atlanta attorney David Pardue of Parker Poe, who Dean retained as counsel. According to Robinson, Dean ultimately placed Parker Poe in charge of all of Dean's civil litigation, including this proceeding, in about February 2022, and Dean told Robinson to send litigation documents to Parker Poe. Robinson testified that, although Parker Poe was not enrolled, they drafted Dean's answer in this case, which Robinson approved and filed.

[34] Robinson also testified that he sent a FedEx package that may have contained the Requests to Dean on June 16, 2022, which was delivered on June 17, 2022. Robinson stated that it was also possible that he emailed the Requests to Karen, as Dean does not check email, but Robinson could not confirm that he did.

[35] On April 11, 2022, Robinson emailed several attorneys representing Dean, including David Pardue, John Andrishok (a Baton Rouge attorney who currently represents Dean) and John McClendon (Dean's criminal defense attorney) about the status of pressing matters in Dean's ongoing litigation, including the Requests, and requesting a conference call. On that same day, April 11, 2022, Stoltz of Parker Poe separately emailed Robinson to advise that Parker Poe no longer represented Dean and to direct correspondence to Dean. After Robinson received Stoltz's April 11, 2022 email, Robinson testified that he discussed the Requests with Dean via text message during unspecified times.

[36] Robinson was also in contact with Moeller, and Robinson and Moeller met with Dean in Georgia on May 9, 2022 to discuss Dean's litigation. Robinson confirmed that he also physically gave the Requests to Dean in Louisiana on June 23, 2022, after Dean requested his files.

testimony, which was credible and largely supported by documentation that Robinson contemporaneously consulted, directly contradicts Dean's statements that Robinson failed to notify Dean and/or Dean's other counsel of the Requests, failed to send them the Requests, and/or failed to communicate with them.[37]  Dean's allegation that Robinson failed to timely apprise Dean of the Requests, as well as several other allegations against Robinson, lack credibility and do not suffice as an excuse for Dean's failure to respond to the Requests, or his failure to seek leave to withdraw his admissions in a timelier fashion.  Dean has failed to show that he was not apprised of the Requests in sufficient time to respond, or that he acted diligently.

### C. Dean Has Not Established that Withdrawal of the Admissions Would Serve the Presentation of the Case on Its Merits and/or that the Admissions are Contrary to the Record of the Case

Dean seeks to withdraw his deemed answers in response to Requests No. 1-4, 26-32, 33-39, 40-46, 47-52, 116-121, 122-128, and 129-135.[38]  In support of his argument that presentation of the merits would be served by the withdrawal, Dean asserts in his declaration that he has defenses to payment, which is that he did not sign eight of the notes: the four notes executed by Dean and Lano Property Holding Co, LLC (8150, 7850, 7950, 8050) on June 24, 2021, four days after Dean had surgery; the three notes executed on July 21, 2021 by Dean Classic Cars, LLC (5650, 5750, 5850); and one note executed on August 2, 2201 by Dean Classic Cars, LLC (9150).[39]

---

[37] Robinson testified that Dean terminated Robinson's representation multiple times, but then continued to ask Robinson to do things for him.  Robinson says he did not tell Dean that he was terminating the relationship and tried to encourage Dean to make decisions in Dean's best interest, including how to respond to issues in this lawsuit.  Robinson believed that his representation ended on July 8, 2022 after Dean demanded his files.

[38] R. Doc. 40, p. 2; R. Doc. 40-1, pp. 2-3; and R. Doc. 35-4 (Requests).  The challenged Requests appear to seek admissions as to issues of fact, *i.e.*, whether a Dean entity executed a disputed note; whether Dean had authority to execute the disputed note on behalf of the entity; whether the disputed note obligates the Dean entity to make monthly payments; whether the Dean entity has made any payment in response to Investar's demands for payment, *etc*.  In any case, Dean has not argued that the challenged Requests improperly seek admissions as to conclusions of law.  *In re Carney,* 258 F.3d at 419, citing *Playboy Enterprises, Inc. v. Welles,* 60 F.Supp.2d 1050, 1057 (S.D. Cal. 1999) ("Requests for admissions cannot be used to compel an admission of a conclusion of law.").

[39] *See* R. Doc. 40-2, pp. 4-6; R. Doc. 40-1, pp. 2-4; R. Doc. 58, pp. 4-5 (Dean's reply) and a list of the notes at R. Doc. 41-2, p. 9.  The parties confirmed at the hearing that, of these eight notes, only three are currently in dispute as to liability:

Dean asserts that he did not have the mental capacity to execute the disputed notes because, following a June 21, 2021 tooth-extraction surgery, he experienced a lot of pain over at least a week, was placed on strong opioid medication and received injections in his gums for pain. Thereafter, "over the next several months, **and continuing until today**," Dean contends he is/has been unable to "concentrate or engage in a social conversation, much less a business communication;" cannot/could not sleep; is/was not in a mental state "where [he] was able to read a magazine, much less a promissory note or other work-related document;" and his behavior has changed.[40] Karen's declaration echoes these allegations.[41]

Dean also alleges that, before the surgery, he negotiated a contract by which he would sell all seven of his nursing homes, which was solidified at the time of the surgery. Dean asserts that he did not intend to borrow substantial sums of money or enter into additional transactions in case other transactions would complicate the sale of the nursing homes. Dean alleges that he did not intend to enter into any substantial business transactions in the weeks following the June 21, 2021 surgery.[42] Dean also contends that the disputed notes do not contain his signature, but rather, contain a "phony" signature, as compared to what he contends is his valid signature.[43] Karen's declaration makes similar assertions.[44]

---

5750, 5850, and 9150. The parties also confirmed that notes 8150 and 5650 were satisfied, and that Dean's liability on notes 7850, 7950, and 8050 has been adjudicated by the U.S. District Court for the Eastern District of Louisiana in *Investar Bank, N.A. v. Lano Property Holding Co., LLC et al.*, No. 22-285 (E.D. La. Nov. 4, 2022), *see* R. Doc. 26 (Order and Reasons) and R. Doc. 27 (Judgment). There is no evidence in the record of this proceeding that the Eastern District ruled on Dean's liability for the associated commercial guarantees, and Investar's counsel indicated that the Eastern District did not rule on the guaranties.

[40] R. Doc. 40-2, pp. 2-3 (emphasis added).
[41] R. Doc. 40-3, p. 3.
[42] R. Doc. 40-1, pp. 3-4 and R. Doc. 40-2, pp. 2-3.
[43] R. Doc. 40-1, pp. 4-5; R. Doc. 40-2, pp. 4-7; and *see* the June 24, 2021 notes at R. Doc. 25-4 (note 8150) and R. Doc. 49-3, pp. 1-6 (notes 7850, 7950, and 8050); *see* the July 21, 2021 notes at R. Doc. 26-4, R. Doc. 27-1 and R. Doc. 27-3 (notes 5650, 5750, 5850); and *see* the August 2, 2021 note at R. Doc. 27-5 (9150). Dean contends that the "phony" signature on the July 21, 2021 notes looks similar to the "phony" signatures on the June 24, 2021 notes. R. Doc. 40-2, pp. 5-6.
[44] R. Doc. 40-3.

As an initial matter, Dean's allegation that "continuing until today," he is unable to concentrate on or engage in business matters (an issue credibly challenged by Investar's witnesses at the hearing, and clearly refuted by Dean's activities post-surgery),[45] calls into question whether he had the necessary capacity to execute his declaration submitted in this case in the first place. Dean's reliance on a declaration that alleges on its face that Dean lacked the capacity to execute it is suspect.[46]

The statements in Dean's declaration denying his execution of the notes and his capacity were also refuted by witness testimony and lack credibility. Investar Bank witnesses Stephen G. McCollister and Byron Breaux testified that they personally witnessed Dean execute the three June 24, 2021 promissory notes (7850, 7950, and 8050) on behalf of Lano Property Holding Co. at Dean's office.[47] McCollister testified that he has interacted with Dean in the past, and that Dean's behavior on June 24, 2021 was not odd, but was consistent with Dean's normal behavior during their prior business transactions. Breaux also testified that Dean's behavior was not odd at the June 24, 2021 closing. Further Breaux testified that for thirty minutes following the June 24, 2021 closing, Breaux and his co-worker, Jill Noel, discussed a potential, complex loan request with Dean, and Dean was able to discuss it intelligently and effectively. While Dean contends "[I] did not sign" these particular

---

[45] Investar contends that Dean's allegations of incompetency following his June 21, 2021 surgery are specious because Dean was deposed in August 2022 as a corporate representative (of the plaintiff) in a different proceeding in this court, *Bob Dean Enterprises Inc., et al., v. Westchester Surplus Lines Insurance Company*, No. 21-28 (M.D. La.), at which time Dean was lucid and competent to testify. R. Doc. 49, p. 10 and *see* Dean's deposition transcript at R. Doc. 55-2. Investar also contends that Dean's allegations of incompetency have been rejected in litigation pending against him in the U.S. District Court for the Eastern District of Louisiana, which refused to set aside a default judgment against Dean. That court noted conflicting testimony given by Dean in an April 2022 Georgia conservatorship proceeding, at which Dean testified that he was mentally competent and did not need a conservator. R. Doc. 49, pp. 8-9 and *see* R. Doc. 55-1 (*Investar Bank, National Association v. Gretna Commerce Property, LLC,* No. 22-65 (E.D. La. July 8, 2022) (Order denying motion to set aside judgment and noting Dean's contradictory Georgia testimony).

[46] R. Doc. 40-2, p. 3. Karen's declaration purports to improperly assert lay opinions as to whether Dean's signatures on the promissory notes are authentic. R. Doc. 40-3, pp. 4-5. In any case, neither Karen nor Dean attended the hearing so they could not be questioned regarding their declarations.

[47] *See* R. Doc. 49-3, pp. 1-6 (notes 7850, 7950, and 8050), and *see* the settlement statements for these three loans signed by Dean and McCollister at R. Doc. 49-2. As noted previously, Dean's liability on these notes has already been adjudicated.

notes,[48] Dean did not attend the hearing, and his written declaration is refuted by McCollister and Breaux's credible testimony that Dean executed the three notes, three days after his surgery, with capacity to do so.[49] Furthermore, the credible testimony of all three witnesses, and the other evidence offered by Investar, such as Dean's payments on seven of the notes and his text messages seeking to borrow additional funds after the closing of the Lano loans,[50] call into question the reliability and trustworthiness of the declarations made by Dean and Karen.[51] Accordingly, the declarations, which are the only evidence proffered by Dean, fail to establish the first prong of the Fed. R. Civ. P. 36(b) analysis, which is that withdrawal of the admissions would serve the presentation of Dean's defenses on the merits, because Dean's asserted defenses lack credibility. The declarations also fail to show that the deemed admissions are contrary to the record of the case, as the witnesses' testimony credibly indicates that Dean executed at least three of the notes he disputes and that he had the

---

[48] R. Doc. 40-2, p. 9

[49] McCollister and Breaux testified consistently with the allegations set forth in their own declarations, which they adopted at the hearing. R. Docs. 49-1 and 50-1. Dean's counsel did not question either McCollister or Breaux. *See also* Investar's Opposition at R. Doc. 49, pp. 6-7. Dean argues that the declarations attached to Investar's opposition should not be considered in connection with the summary judgment motion, but also argues that they should not be allowed to establish a "factual record" in opposition to Dean's declarations, or to attack the credibility of Dean's declarations, in support of the instant Motion because the Court should not have to determine the credibility of cross affidavits. R. Doc. 58, pp. 1-2. As McCollister and Breaux testified at the hearing regarding their declarations and adopted them, the credibility of their declarations does not require further testing. Moreover, their declarations are properly considered because they refute Dean's allegation that he did not execute the June 24, 2021 notes and that he lacked capacity to do so at that time.

[50] *See* the footnotes above regarding Dean's testimony in other cases that contradict his lack of capacity arguments. Investar also asserts that Dean's denials of having executed the eight notes are not supported by his actions, as Dean has previously made payments on some of the disputed notes. R. Doc. 49, p. 8 and *see* the declaration of Investar's Special Asset officer, John "Casey" Thornton, Jr. regarding Dean's payments on some of the loans at R. Doc. 51-5 and some of the checks written by Dean to Investar as payment on some of the loans at R. Doc. 52-4 (payment on 5650), R. Doc. 53-1 (payment on 5750) and R. Doc. 53-4 (payment on 5850). Investar also offers several letters and text messages from Dean sent in July and August 2021 regarding borrowing funds, which directly contradict Dean's allegation that he "did not intend to enter into any substantial business transactions in the weeks after the [June 21, 2021] surgery." *Compare* R. Doc. 40-2, p. 3 *with* R. Doc. 49, pp. 7-8 and R. Doc. 51-1, the declaration of John D'Angelo, the Chief Executive Officer of Investar Bank, attesting to a letter and text messages he received from Dean in July 2021 and August 2021 regarding Dean's requests for additional loans (which eventually materialized into loan 9150 executed on August 2, 2021) and *see* the letter and messages at R. Docs. 51-2 through 51-3. The Thornton and D'Angelo declarations relate to, and refute, Dean's allegations that he did not execute the disputed notes, and could not engage in transactions after his surgery, and thus are properly considered.

[51] As such, the other argument raised by Dean, *i.e.*, the authenticity of his signature on the notes (R. Doc. 40-1, pp. 4-5, R. Doc. 40-2, pp. 4-7) is not addressed, but Dean has not offered any persuasive evidence to support his argument that the disputed signatures are not his.

capacity to do so, which does not contradict the deemed admissions.

### D. Investar Would be Prejudiced By Withdrawal of the Deemed Admissions

Investar filed this action on November 19, 2021 and filed its summary judgment motion in reliance on the deemed admissions in September 2022.[52] Withdrawal of Dean's admissions would prejudice Investar because it would lead to further delay of the resolution of the merits of the case. Robinson credibly testified that he made Dean aware of the Requests in April 2022, and that Dean received the Requests, at the latest, in June 2022,[53] yet, Dean did not move to withdraw the admissions until after Investar filed its summary judgment motion in September 2022 in reliance on the admissions. Investar would be prejudiced if Dean were permitted to substitute new responses, as that would likely require Investar to file a new dispositive motion after conducting discovery, and to thus incur additional expenses.[54] Furthermore, the only evidence that Dean relies on to establish lack of prejudice—the declarations—are not credible, so that Dean has failed to establish the second prong of the Fed. R. Civ. P. 36(b) analysis. Accordingly, Dean's Motion will be denied, and as such Dean is deemed to have admitted the disputed Requests.[55]

---

[52] R. Docs. 1, 25.

[53] Dean's authority at R. Doc. 40-1, p. 8, *Mendez v. Joeris General Contractors, Ltd.*, No. 12-608, 2013 WL 3153982 (W.D. Tex. 2013), is distinguishable because in that case, the court found that withdrawing the deemed admissions would promote the presentation of the merits and the nonmoving party faced no prejudice in the withdrawal because it had time to conduct discovery before trial, neither of which is present here. The *Mendez* court further found that the plaintiff, who had been *pro se* when the requests were served, moved promptly to withdraw the admissions after retaining counsel. In this case, Dean had counsel during the entirety of the proceedings, and his prior counsel established that he maintained contact with Dean up until his withdrawal as counsel, including providing Dean with the Requests.

[54] Both parties raise the former trial date of March 27, 2022; however, after the filing of the motion papers, the trial date was continued. R. Doc. 60. While Dean asserts in reply that Investar can conduct further discovery (R. Doc. 58, pp. 2-3), the discovery deadline expired nearly a year ago (R. Doc. 21) and re-opening it would prejudice Investar as it would further delay resolution of the case.

[55] The undisputed Requests were admitted per Fed. R. Civ. P. 36(a)(3). In his reply memorandum, Dean argues that his third affirmative defense in his Answer ("Plaintiff's claims against Defendant should be dismissed because some or all of the promissory notes and guaranties are void due to lack of capacity to execute contracts") should be construed liberally as a denial that Dean's signatures are on the promissory notes in response to the Requests. R. Doc. 58, p. 2. Dean cites no authority supporting this proposition, but it is rejected because it flies in the face of Fed. R. Civ. P. 36(a)(3), which specifically states that "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." The rule does not permit a previously asserted affirmative defense to be substituted in the place of a deemed admission.

Finally, because Dean's Motion to Withdraw will be denied, Dean is not permitted to present evidence (such as his declaration) in opposition to the deemed admissions or to the Motion for Summary Judgment.[56] As such, Dean's request for additional time to respond to Investar's Motion for Summary Judgment is also denied.[57]

### III. CONCLUSION

Dean's allegation that his former counsel, Robinson, did not timely notify Dean of Investar's requests for admissions, and other allegations in the declarations of Dean and his wife, Karen, were contradicted by live testimony and lack credibility. Dean has also not satisfied either prong of the Fed. R. Civ. P. 36(b) analysis, as he has not shown that presentation of the merits of this action would be served by withdrawal of his deemed admissions, or that there is no prejudice to Investar if Dean's admissions are withdrawn. Moreover, even if Dean had established these factors, denial would still be warranted due to Dean's overall lack of candor.[58]

Accordingly,

**IT IS ORDERED** that the Motion to Withdraw Certain Admissions Deemed Admitted Pursuant to Request for Admissions, filed by Defendant Bob G. Dean, Jr.,[59] is **DENIED.**

Signed in Baton Rouge, Louisiana, on July 10, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[56] *See Poon-Atkins v. Sappington,* No. 21-60467, 2022 WL 102042, at *2 (5th Cir. Jan. 10, 2022) ("But rule 36 admissions 'are conclusive as to the matters admitted, [and] they cannot be overcome at the summary judgement stage by contradictory affidavit testimony or other evidence in the summary judgment record.'")(citation omitted) (subsequent history omitted).
[57] R. Doc. 40-1, pp. 9-10.
[58] *See Le,* 2007 WL 715260, at *2 ([E]ven when Rule 36(b)'s two-factor test has been satisfied, the district court 'still has discretion to deny a request to withdraw or amend an admission.'") (citations omitted).
[59] R. Doc. 40.